THOMAS NEWMAN, PLAINTIFF AND APPELLANT, V. MILTON EDWARDS, DEFENDANT AND APPELLEE.

**Conveyance:** DEED: MORTGAGE: CONSIDERATION. Where, in ·an action by a plaintiff tó have a certain deed declared a mortgage to secure the sum of $60 debt, and $440 to be thereafter advanced, the defendant answered.admitting the debt, but denying the agreement for future advances, and alleging that the deed was intended as a conveyance upon an adequate consideration consisting of board, lodging, and services rendered by the defendant to the plaintiff, in all of the value of $700. *Held,* That the proof failed to establish such consideration, and the plaintiff was entitled to redeem.

APPEAL from the district court of Douglas county. Heard below before WAKELEY, J.

*O'Brien & O'Brien* and *O. H. Ballou,* for appellant.

*George F. Brown,* for appellee.

MAXWELL, CH. J.

The plaintiff in his petition alleges that on the 27th day of September, 1857, and ever since said date to the present time he was and still is the owner in fee simple of

the south half of the south-west quarter of section three, and the north half of the north-west quarter of section ten, township fourteen, range eleven east, containing 160 acres of land, in Douglas county, Nebraska, and that he is now and has ever since the said date to the present time been in the quiet and peaceable possession thereof; that on or about the sixth day of February, 1873, the said plaintiff was indebted to defendant in the sum of about sixty dollars, and also was indebted to divers and sundry other persons in sums of money amounting in the aggregate to about the sum of $440; that said defendant, on or about said last mentioned date, agreed to loan to said plaintiff the said sum of $440 for the purpose of paying the same to his creditors, which, together with the said $60 then due defendant from plaintiff, would amount to the sum of $500; that in order to secure the payment of the said sum of money the plaintiff agreed to give to the defendant security on the said described land; that in pursuance of said agreement and for the said purpose of securing the payment of the said sum of money, plaintiff, on the said 6th day of February, 1873, made and executed a deed of said described real estate to said defendant, which deed was duly recorded in the office of the county clerk of Douglas county, Nebraska, on the 10th day of December, 1873.

That although said deed was an absolute conveyance in terms on its face, yet nevertheless the same was made by the said plaintiff to the said defendant as a mortgage only, and was intended as a security in the nature of a mortgage, which mortgage deed was not to be delivered to said defendant until said defendant should pay over to said plaintiff the said sum of $440 as he had agreed to loan him; that said defendant never paid over to said plaintiff the said sum of $440, nor any part thereof, though often requested so to do, and wholly disregarded his agreement in that behalf; that afterwards, on or about the —— day of

—— 1875, the said·plaintiff and said defendant had a settlement of all matters between them, and plaintiff gave other and ample security to defendant for his said indebtedness to him; that said security has been subjected to the payment of the·said indebtedness, and that the said sum of $60, money for which a note had been given, has long since been paid to defendant.

That shortly after the time of the said settlement last made as above, between plaintiff and defendant, said defendant obtained possession of the said mortgage deed without the knowledge or consent of this plaintiff, and without paying any consideration therefor; that said defendant though often requested to release and discharge the said mortgage deed by proper instruments of release or conveyance, yet defendant has hitherto and still does neglect and refuse so to do, and that said mortgage deed is a cloud upon the title of this plaintiff.

Wherefore plaintiff prays judgment against the said defendant that he, the said defendant, do cancel and discharge the said mortgage deed by proper instrument of conveyance, and that the said cloud upon plaintiff's title to said land be removed, and for such other and further relief as justice and equity may require.

The defendant in his answer alleges that it is true, and he admits that the said petitioner did, on or about the 6th day of February, 1873, execute and deliver to this defendant a deed of the lands described in plaintiff's petition, which was duly recorded in the record of deeds of Douglas county, Nebraska, at the time stated in said petition; that at the time of making said deed the plaintiff was largely indebted to this defendant in a sum much larger than sixty dollars mentioned in said petition, and plaintiff desiring to pay the same, did of his own free act and accord make and deliver to defendant the deed aforesaid for the purposes of paying said indebtedness, and said plaintiff well knew the same to be an absolute deed of said lands, and so intended and under-

stood by the parties thereto at the time of its execution; defendant denies that he ever agreed to loan to said plaintiff four hundred and forty dollars as stated in said petition, nor any other sum of money, and he denies that said deed was given as a mortgage to secure the repayment of any such loan and the sixty dollars aforesaid; denies that there was any design or intention that said deed should be regarded as security for an old debt and money to be loaned by this defendant to plaintiff, and defendant never heard of any such pretence or the loaning of $440 as part of the consideration of said deed until he saw it in plaintiff's petition herein; admits that he did not pay over to plaintiff the sum of $440 for the reason that he never agreed to do so, and was not requested by the plaintiff nor by any one for him to make any such payment; denies that he had at any time after the execution of said deed of Feb. 6th, 1873, a settlement with plaintiff of the indebtedness constituting the consideration of said deed, and took other security for said indebtedness as falsely stated in said petition; avers that he never had any such settlement with plaintiff, and he was never requested to have any, and defendant never promised to cancel or in any way annul said deed of Feb. 6th, 1873, and the plaintiff never called upon or requested defendant to enter satisfaction of said deed nor to execute any other instrument of writing releasing or annulling said deed of Feb. 6th, 1873, conveying said lands unconditionally and absolutely to defendant; denies that plaintiff has been the owner of said lands since 1857, and in peaceable possession of said lands from said last mentioned date up to the commencement of this action as falsely stated in plaintiff's petition; on the contrary defendant avers that immediately after the execution and delivery by the plaintiff of the deed of Feb. 6th, 1873, to defendant, this defendant took possession of said lands under said deed with the full knowledge and consent of plaintiff, and has been in the quiet and undisputed posses-

sion of said lands about twelve years immediately preceding the commencement of this action, and defendant submits that the plaintiff ought not further to have or maintain his action against this defendant.

Defendant denies each and every allegation in the said petition contained not hereinbefore admitted or denied, and having fully answered prays hence to be discharged with his costs.

The reply is a general denial.

On the trial of the cause the court found for the defendant, and dismissed the action.

The points of decision as stated in the record are as follows:

"1.   The theory and grounds of plaintiff's action are, that the deed in question was never delivered to the defendant, but was surreptitiously taken by him from plaintiff's possession and control.   The clear preponderance of evidence is against this proposition, and satisfactorily establishes that there was a nominal delivery of the deed to defendant after it had been recorded and returned to plaintiff. This explanation of the reason for executing it and having it recorded is unsatisfactory, and was unsupported except by his own testimony, while it is especially contradicted by that of the defendant.

"2.   For the purposes of this action it is not material whether the deed was made and delivered with the intent to hinder creditors, or guard against the possible results of the pending suit against Newman, or as a gift or compensation to Edwards.   In either case it was a valid transfer as between the parties, voluntarily made, and a court will not compel a reconveyance.   But the most reasonable explanation of the transaction is, that the deed was made and recorded by Newman in view of the litigation in which he was involved, without the knowledge of Edwards, and that it was finally delivered to him in the presence of his brother, who could be called as a witness to the occurrence,

with the statement that it was in consideration of an indebtedness to Edwards. This is testified to positively by the witnesses, although denied by Newman; he virtually admits that after Edwards obtained the deed, he acquiesced in Edwards' suggestion that the deed be held by him as a safeguard on account of the pending suit. If the deed was executed, or allowed to remain in Edwards' possession with the intent of hindering or delaying creditors, a court, of course, will not aid either party."

It will be observed that the ground of the plaintiff's claim, as stated in his petition, is, that he executed the deed in question to secure a note given by him to the defendant for the sum of $60.00, and the further sum of $440.00 to be thereafter loaned to him. The question of the delivery of the deed seems to be established by a preponderance of the testimony. The defendant in his answer admits the indebtedness to him of $60.00, but denies the agreement by him to advance the $440.00 to the plaintiff by way of loan, and denies that the deed in question was executed as a mortgage, but alleges that the plaintiff was indebted to him in a large amount and that the deed in question was executed in satisfaction of the debt. No question of gift, or that the deed was executed to hinder, delay, or defraud creditors, is made in the pleadings. The sole question, therefore, is, was the deed intended as security for the payment of the amount owing to the defendant by the plaintiff? The testimony shows that at the time of the conveyance the land in question was unimproved prairie of good quality, and worth from five to seven dollars per acre.

In regard to the consideration the defendant testifies:

"Mr. Newman took out this deed and handed it to me. To the best of my remembrance, he says: 'I have deeded this land for what I owe you. I don't expect you to lose anything by me.' That is my best recollection."

Q. You may state in that connection how much he owed you at that time, as near as you can get at it, without going into details.

A.   He owed me about $700; something near that.

Q.   Mr. Newman, in his petition, says you agreed to loan him $440 at the time the deed was executed; state what you know about that.

A.   I never heard of the $440 until I got a copy of this complaint.

Q.   Did he ever ask you for $440 about the date of this deed?

A.   He did not.

Q.   Did he ask you for any money?

A.   He did not.

Q.   He has stated that you held a note of his and that he renewed that note of his about '75; what about that?

A.   I did hold a note of his, but that was renewed, I think, about '73.

Q.   Can you state whether it was before the date of that instrument or not?

A.   I cannot.

Q.   Was it renewed before that deed was delivered to you?

A.   It was.

Q.   Did he, at that time or any other, give you a chattel mortgage for the security of that note or any other indebtedness?

A.   He never gave me a chattel mortgage, and I never heard of it until to-day.

Q.   Did he inform you he had given a chattel mortgage to anyone else for your benefit?

A.   He did not.

Q.   After the execution of that instrument there and the delivery of it, or since, did he ask for a settlement with you?

A.   He did not, except at the time I speak of, in '73. That was before that.

Q.   Did you take any other security for his indebtedness to you?

Newman v. Edwards.

A.  I did not.

Q.  What became of that note?

A.  I tore it up, after I got the deed.

Q.  Did you accept this deed upon those terms?

A.  I did—had no doubt but what it was intended as an honest deed.

Q.  After the execution of this paper here in '73, in February, did he make his home at your house during the next year or so, or before that?

Objected to as leading.

Q.  State whether, after this deed, he made his home at your house, between that time and the date of its delivery.

A.  He was there a considerable portion of the time; some of the time he went away.

Q.  He has stated you procured this deed from his valise; do you know anything about that?

A.  I do not.

Q.  I understand you had no settlement with him after the date of this that you know of.

A.  Never had.

Q.  Did he ever request you for a settlement?

A.  He did not.

Q.  State what difficulty, if any, you ever had with your uncle.

A.  We never had any difficulty until the present one that I know of.

On cross-examination he testified in regard to the claim against the plaintiff:

"My best knowledge of the matter, my best impressions are that he left there about the fall of 1875. And I know from that that it was some three or four years before that, probably three or four years he made our house a stopping place a good portion of the time.

Q.  Now you say he did not pay you for that service?

A.  He did not.

Q. Did you make any definite charge for the service at the time?

A. We didn't agree on any contract at the time.

Q. Did you set it down, keep any book account?

A. I set it down; we made no agreement about it at all.

Q. How much did you charge for the service?

A. I put it down at $30 for the eight days; furnished my horse and buggy, and paid my own expenses.

Q. What next did you furnish to Mr. Newman, in value?

A. Well, I helped Mr. Newman along quite a good length of time.

Q. How long?

A. I think altogether it would amount considerably over two years.

Q. Now have you anything other than your general recollection to fix that fact? Did you keep any account of that?

A. I recollect it pretty definitely.

Q. Did you keep any entry of it?

A. I did.

Q. Make charges?

A. I just considered it so much charged, or so much for work.

Q. Where have you got that entry, if at all?

A. I have it on my book at home.

Q. Did you keep an account with Mr. Newman for his board when he stayed at your house?

A. Well, I did; I kept an account; he was not there all the time; a portion of the time.

Q. How much did you charge for that?

A. I charged $4.50 a week for boarding and washing. I kept a horse part of the time.

Q. How much have you entered as charged to Mr. Newman for that board?

A. I have two years.

Q. Entered in your book?

A. Yes, sir; I consider that I helped him more than that.

Q. How much did you charge for that?

A. I charged $4.50 a week.

Q. For the whole two years?

A. Yes, sir, and including the board of the horse in that.

Q. As a matter of fact, you said ·he was not there all the time?

A. He was not there all the time, of course; the two years consist perhaps of three or four years; he would be there perhaps a month or two at a time, and then be gone a week or two, perhaps.

Q. Week by week, time by time, and item by item, have you any definite charge on the book at all?

A. I just put it down on the book.

Q. When did you do it?

A. At the time.

Q. Did he know that you were charging him?

A. There was no agreement or contract about it, he just said he didn't expect me to lose anything by him, that was all the agreement.

Q. Did he know you were making any charges?

A. I don't know that he did.

Q. As a matter of fact, who was furnishing this board, who was keeping house at the time?

A. I furnished the provisions myself.

Q. Was it not a fact that your mother ran the house, and was the head of the house at the time?

A. It was not.

Q. And it was her household?

A. It was not; my mother was an old lady, too old to have charge of the house. I furnished everything, paid the hired help; she had no connection with furnishing provisions at all.

He also testifies that the plaintiff "was there in 1873 some, 1872 some, in 1874 some, and after this transaction he stayed there for a year, perhaps, almost continuously." He also states that he was a witness for the plaintiff three different times, which took three days each time, for which he charged $33.35. He denies knowing anything about the chattel mortgage, and states that the $60 note at the time he received the deed amounted to $74 or $75, and that on receiving the deed he tore the note up."

A brother of the defendant testifies " that a nephew of the plaintiff was running a store at Bloomingsport for the plaintiff, some sixty or seventy miles from the defendant's residence, and that the plaintiff would come and spend a month at a time, that the defendant's mother was the plaintiff's sister;" and the plaintiff seems to have been kindly received and made welcome. The plaintiff himself, on being recalled, testified:

Q. You have heard the defendant state that you were indebted to him in round numbers in $700 at the time this deed was delivered. Will you state how that was, whether or not you were indebted to him or not?

A. I have no recollection of being indebted. I was at his mother's occasionally, may be two or three days at a time.

Q. That was your sister and his mother?

A. Yes, sir, that was my sister.

Q. What was the occasion of your being there?

A. Well, I had lived in Crawfordsville, about seventy miles west of there, and this store was about thirty miles on a direct line east, and I made it a stopping place as I would go back and forth.

Q. Halting place between the two places?

A. Yes, sir.

Q. You stopped as a matter of visiting two or three days at a time?

A. Yes, sir, some times I would stop two or three days.

Q. Now, Mr. Newman, had you any conversation at any time or any intimation from these gentlemen (pointing to defendants) that there was any charge against you for that board during the time you stopped there?

A. There never was.

Q. You never heard that until to-day?

A. Never.

Q. Was there any other way in which you were indebted to him that you know, except that $60 note business that you know of?

A. None; when I was there I worked just the same as the family worked.

Q. How did you busy yourself there?

A. I sometimes shucked corn, sometimes helped them thresh and harvest and make fences, and generally helped at things when I was there. I was no idle hand.

There is considerable other testimony of the same tenor as that above set forth. The defendant claims to have made an itemized account of the charges against the plaintiff at the time they occurred. It is unfortunate for him that he failed to offer or introduce such account in evidence. His own testimony shows that he made no claim to the plaintiff for board and services before the execution of the deed in question, nor, so far as it appears, did the plaintiff expect to pay for the same. The most that can be said is, that the plaintiff was a frequent visitor at the home of his sister, the defendant's mother, and frequently remained for several days, occasionally weeks. None of the parties seem to have regarded him as a regular boarder, and it is somewhat remarkable, if there was an intention to charge him for his board and lodging, that no intimation of that fact was given at the time. Then, too, if the deed was given in satisfaction of the debt of $60 and interest, it is somewhat remarkable that the defendant did not deliver to plaintiff his note. Upon the whole case we are of the opinion that the defendant has failed to establish the payment of $700, the consideration as claimed.

About the year 1879 the plaintiff settled on the land in controversy, built a shanty thereon, and in 1880 caused a portion of it to be broken up. The defendant instructed his agent to allow the plaintiff to take all the rents and profits of the land, and he received the same, up to a time shortly before the commencement of this suit. The testimony shows that the defendant has paid taxes on the land for a number of years, and that he has received the rents and profits for two or three years.

The judgment of the district court is reversed. A referee will be appointed to take testimony and state an account between the parties, and upon payment by the plaintiff of the amount due to the defendant as found by said referee, the defendant will be required to convey said land to the plaintiff, free and clear of all incumbrances.

JUDGMENT ACCORDINGLY.

THE other judges concur.